UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JILL CASSETTE,<br><br>    Plaintiff,<br><br>    v.<br><br>KING COUNTY; EDWARD DRAPER, personally and in his official capacity; DOES 1-10, personally and in their official capacities.<br><br>    Defendants. | Case No. C06-340 MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment dismissal of all claims. (Dkt. No. 27.) After reviewing the motion, Plaintiff's response (Dkt. No. 30), Defendants' reply (Dkt. No. 32), all papers submitted in support of the filings, and the balance of the record, the Court GRANTS Defendants' motion on all claims. The Court's reasoning is set forth below.

**Background**

In September 2003, Jeff Skinner contacted the Vice Unit of the King County Sheriff's Office with information about an illegal prostitution ring called Seattle Garden of Eden. (Draper Decl. Ex. A at 3.) Mr. Skinner told detectives that the illegal business was run by his ex-girlfriend, Suzanne Dean, and that Ms. Dean's daughter, Jill Cassette, was also involved. (Id. at 3, 10.) Detective Edward Draper, who had been informed of the Garden of Eden website by a separate party in 2002 (Id. at 4), began a formal investigation into the operation. On November 24, 2003, Detective Draper received a search warrant for Ms. Dean and Ms. Cassette's home and person. (See Draper Decl. Ex. F.) Both women were arrested on November 25, 2003 and

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 1

released the next day. (Cassette Decl. at ¶ 19.) On December 9, 2003, the Sheriff's department released a public statement that detectives had "broken up a major prostitution ring operating in the Seattle area" and "[t]he two operators of the prostitution ring were arrested[.]" (Cassette Decl. Ex. G.)

These events give rise to Plaintiff's claims against Defendants for: (1) violation of constitutional rights under 42 U.S.C. § 1983; (2) defamation; (3) negligent investigation; (4) negligent and/or intentional infliction of emotional distress; (5) false imprisonment; (6) false arrest; (7) assault and battery; (8) negligent supervision; and (9) local government liability under respondeat superior and Monell v. Dept. of Social Services of City of New York, 436 U.S. 658 (1978). Defendants have brought a motion for summary judgment dismissal of all claims.

**Analysis**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Material facts" are facts "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

To defeat a properly supported motion for summary judgment, Plaintiff cannot rely on the allegations in her complaint as sufficient; she must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In her response, Plaintiff does not address Defendants' arguments against her claims for negligent investigation (claim three), negligent infliction of emotional distress (claim four), assault and battery (claim seven), negligent supervision (claim eight) and municipal liability (claims nine and ten). Instead, she chooses to pursue only four of her original claims, stating "[s]ummary judgment is not appropriate on Jill Cassette's § 1983 claim for violation of her Fourth Amendment rights, her state law defamation

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 2

claim, her state law outrage claim, or her state law false arrest and false imprisonment claims." (Resp. at 1.) Because Plaintiff does not offer a genuine issue of material fact for the remaining claims, Defendants' motion is granted on claims three, four, seven, eight, nine, and ten.

I. <u>Claim One: Violation of Fourth Amendment Rights</u>

If an officer knowingly or with reckless disregard for the truth includes materially false statements or omissions in a warrant affidavit, an arrest under the warrant can constitute a violation of the suspect's Fourth Amendment rights. <u>Franks v. Delaware</u>, 438 U.S. 154, 157 (1978). To succeed on her claim, Plaintiff must: (1) offer a "substantial showing" that Mr. Draper's warrant affidavit contained a false statement or omission that was deliberately false or made with reckless disregard for the truth; and (2) establish that "without the dishonestly included or omitted information the affidavit is insufficient to establish probable cause." <u>Mendocino Envtl. Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1295 (9th Cir.1999).

The question of reckless or deliberate falsity is generally one for the trier of fact. <u>Liston v. County of Riverside</u>, 120 F.3d 965, 974 (9th Cir. 1997). However, the Court can decide the materiality of allegedly dishonest statements as a matter of law. <u>KRL v. Moore</u>, 384 F.3d 1105, 1117 (9th Cir. 2004). A defendant's motion for summary judgment will be granted if, after setting aside the allegedly false material and after adding in the allegedly omitted material, there "remains sufficient content in the warrant affidavit to support a finding of probable cause." <u>See Franks v. Delaware</u>, 438 U.S. 154, 171-172 (U.S. 1978).

1. <u>Mr. Skinner's Reliability</u>

Ms. Cassette alleges that Detective Draper improperly bolstered Mr. Skinner's credibility in the affidavit by covering his true motive for helping with the investigation. The affidavit states that Mr. Skinner aided the investigation because he hoped that the police would help him get his dog back from Ms. Dean. (Draper Decl. Ex. A at 3.) Ms. Cassette describes Mr. Skinner as a vengeful and manipulative ex-boyfriend whose true motivation was to harm Ms. Dean.

On October 22, 2003, Ms. Cassette's attorney sent a letter to Detective Draper attesting

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 3

to Ms. Dean's legitimate ownership of the dog. (Cassette Decl. Ex. F.) Attached to the letter were court records from the Superior Court of Washington for Snohomish County. (Id.) These records show that on July 25, 2003, a temporary no contact order was issued against Mr. Skinner specifying that he was not to have possession of the dog. (Cassette Decl. Ex. B.) The records also show that a permanent order replaced the temporary order on August 8, 2003. The permanent order does not mention possession of the dog. (Cassette Decl. Ex. C.) Detective Draper correctly relates the content of both of these orders in his affidavit. (Draper Decl. Ex. A at 3-4.) However, Detective Draper failed to include information about a third and fourth court document. On August 22, 2003, a temporary no contact order was issued against Ms. Dean requiring her to give the dog to Mr. Skinner. (Cassette Decl. Ex. D.) Mr. Skinner's petition was later dismissed and that order was withdrawn on August 28, 2003 on the ground that the court had no authority "to divide property where ownership is disputed." (Cassette Decl. Ex. E.)

Detective Draper's failure to include information about the third and fourth court documents does not amount to a falsity or material omission in the affidavit. These documents do not contradict Detective Draper's conclusion that he "ha[d] not discovered any evidence that Suzanne Dean is the true owner of the dog." (Draper Decl. Ex. A at 3-4.) Instead, they show that ownership of the dog was still disputed. (Cassette Decl. Ex. E.)

Ms. Cassette also alleges that Detective Draper hid Mr. Skinner's true motive by omitting details of Mr. Skinner's animus towards Ms. Dean, demonstrated by Mr. Skinner's reference to Ms. Dean as a "dumb bitch" and a "black widow" in emails to Detective Draper. (Baker Decl. Ex. B.) However, the affidavit does not hide the nature of Mr. Skinner and Ms. Dean's relationship; it admits that Mr. Skinner and Ms. Dean had been in a four-year relationship and that Mr. Skinner had been arrested for suspicion of domestic violence against Ms. Dean. (Draper Decl. Ex. A at 3.)

Even had they been more fully developed in the affidavit, Mr. Skinner's vengeful motive and animus towards Ms. Dean are not sufficient to negate his reliability as an informant. The

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 4

affidavit states that Mr. Skinner had been in a four-year relationship with Ms. Dean, that the couple lived together and that Mr. Skinner had "assisted her in marketing the business Garden of Eden." (Id.) Mr. Skinner had been in close proximity to the Garden of Eden operation and the court could reasonably conclude that he had reliable first-hand information on any illegal activity. Further, Detective Draper did not rely solely on information from Mr. Skinner, but had conducted his own investigation into the Garden of Eden operation. (Id. at 6-10.) Detective Draper included the results of that investigation, along with a description of his experience investigating similar illegal activity (Id. at 2), in the affidavit.

### 2. Ms. Cassette's Phone Call and Emails

In the affidavit, Detective Draper states that Jill Cassette had contacted him to ask "why the Vice Unit was trying to recover the dog" and then admitted "that she stole Jeff Skinner's computer." (Draper Decl. Ex. A at 11.) Ms. Cassette alleges that she never admitted to stealing the computer, but instead told Detective Draper only that she had Mr. Skinner's computer and that the Everett Police department had told her to keep the computer because there were forged medical marijuana and insurance documents on it. (Cassette Decl. at ¶ 13.) Ms. Cassette also alleges that Detective Draper omitted from his affidavit the fact that Ms. Cassette was helping her mother hide from Mr. Skinner.

Setting aside the statement about the stolen computer and adding the information about Ms. Cassette helping her mother hide from Mr. Skinner, the warrant still contains sufficient probable cause for a search warrant against Ms. Cassette. The Court employs a "totality of the circumstances test" to determine whether a search warrant is supported by probable cause. Illinois v. Gates, 462 U.S. 213 (1983). This test requires "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Feeney, 984 F.2d 1053, 1055 (9th Cir. 1993).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 5

The affidavit states that Jill Cassette was the Verizon subscriber for the internet service used to conduct Garden of Eden business. (Draper Decl. Ex. A at 8.) It also states that the car driven by Ms. Dean to meet with other women involved in Garden of Eden activities was registered to Ms. Cassette's address. (Id. at 5.) The affidavit states that Mr. Skinner had informed investigators that Ms. Dean's mail was delivered to Ms. Cassette's address and that Ms. Dean buried money received through illegal activity in Ms. Cassette's backyard. (Id. at 5.) Ms. Cassette admitted to possession of Mr. Skinner's property, regardless of how she justified that possession. After assessing Mr. Skinner's veracity and basis of knowledge as discussed above, the Court finds that the information contained in the affidavit sufficiently supported the conclusion that evidence of a crime would be found at Ms. Cassette's home.

The affidavit also relies on email communications between Jill Cassette and a woman named Michelle. (Id. at 11.) These emails were given to Detective Draper by Mr. Skinner. (Id.) The affidavit identifies Michelle as a woman who "used to work for Dean as one of her ladies in the Garden of Eden." (Id.) Although Plaintiff faults Detective Draper for failing to verify the authenticity of the emails (Cassette Decl. at ¶ 15), Detective Draper did contact Michelle to discuss the case and reports that she told Detective Draper "that she had just spoken with [Ms. Cassette] and that she did not want to be involved in the investigation." (Reply Draper Decl. at ¶ 8.)

The emails to and from Michelle were sent and received by "jillsindone_cassette@hotmail.com." (Cassette Decl. Ex. H.) In one email, Ms. Cassette informed Michelle that "everything that has to do with her mother's money, emails, bills, mail, phone calls, etc, go directly to her and she handles them" because her mother is no longer in Washington. (Draper Decl. Ex. A at 11.) Ms. Cassette admittedly told Detective Draper that she was helping her mother hide from Mr. Skinner, confirming the likelihood that Ms. Cassette would be handling her mother's mail and phone calls. Even considering Mr. Skinner's ill will towards Ms. Dean, the Court finds that Detective Draper had a reasonable basis for believing the emails

1  authentic.

2      Despite her allegations, Ms. Cassette does not offer any evidence that the emails were
3  fabricated. See Mosley v. Sacramento County, 61 Fed. Appx. 382 (9th Cir. 2003) (summary
4  judgment appropriate when plaintiff did not make substantial showing of deliberate falsehoods or
5  reckless disregard, and only offered unsubstantiated assertions that the officer and the witnesses
6  were lying). Ms. Cassette has not made a "substantial showing" that the affidavit contained false
7  material assertions and the Court finds that the affidavit sufficiently established probable cause.

8  II.  Claims Six and Seven:  False Imprisonment and False Arrest

9      Because the affidavit supports probable cause, Ms. Cassette's false imprisonment and false
10 arrest claims must be dismissed. Hanson v. City of Snohomish, 121 Wn.2d 552, 563 (Wash.
11 1993) ("probable cause is a complete defense to an action for false arrest and imprisonment").

12 III.  Claim Two:  Defamation

13     To establish a claim for defamation, Plaintiff must show:  (1) a false and defamatory
14 communication; (2) that was unprivileged; (3) fault; and (4) damages. Bender v. Seattle, 99
15 Wn.2d 582, 599 (1983). Defendants must have known or should have known that the statement
16 was false or would create a false impression.

17     The King County Sheriff's Department issued a press release on December 9, 2003. The
18 statement said that police had arrested "[t]he two operators of the prostitution ring," a mother
19 and daughter. (Cassette Decl. Ex. J.)  Plaintiff claims this is a false and defamatory statement
20 because she was never an "operator" of Garden of Eden. (Cassette Decl. at ¶ 3.)

21     Law enforcement have a qualified privilege when releasing information to the public.
22 Bender, 99 Wn.2d at 601. A plaintiff will succeed on a defamation claim against an officer only
23 on a showing that the officer abused that qualified privilege "by making a statement knowing it to
24 be false or with reckless disregard as to its truthfulness." Turngren v. King County, 104 Wn.2d
25 293, 309 (Wash. 1985) (citing Bender, 99 Wn. 2d at 601-02, at 601-02).

26     Plaintiff has failed to present "specific facts creating a genuine issue as to the question of

27

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 7

1    whether the defendant's statements were made after a fair and impartial investigation or upon

2    reasonable grounds for belief in their truth." Turngren, 104 Wn.2d at 310.  Even accepting Ms.

3    Cassette's assertion that no evidence of the Garden of Eden operation was found at her home

4    (Cassette Decl. at ¶ 18), the Court finds that the Sheriff Department's statement was reasonable

5    given the extensive investigation preceding Plaintiff's arrest.  During that investigation, Detective

6    Draper discovered that Jill Cassette was the Verizon subscriber for the DSL service used to

7    access the internet and conduct Garden of Eden business (Draper Decl. Ex. A at 8), and that the

8    license plate on Ms. Dean's car, used in the course of Garden of Eden operations, was registered

9    to Ms. Cassette's address.  (Id. at 5.)  Detective Draper also had the email from Ms. Cassette to

10   Michelle admitting that Plaintiff was handling her mother's "money, emails, bills, mail, phone

11   calls," and Detective Draper had no reason to doubt the authenticity of that email.  (Cassette

12   Decl. Ex. G.)

13       The investigation uncovered sufficient evidence to conclude that Ms. Cassette was

14   assisting the operation of Garden of Eden.  The Court finds that the Sheriff's Department had

15   reasonable grounds to believe the truth of the statement it made on December 9, 2003.

16   IV.  Claim Four:  Intentional Infliction of Emotional Distress (Outrage)

17       To establish outrage, Plaintiff must show: (1) extreme and outrageous conduct; (2)

18   intentional or reckless infliction of emotional distress; and (3) severe emotional distress.  Birklid v.

19   Boeing Co., 127 Wn.2d 853, 870 (1995).  Because Ms. Cassette bases her outrage claim on

20   conduct related to her arrest, she can only succeed by showing that Defendants acted with malice

21   and without probable cause.  Keates v. City of Vancouver, 73 Wn. App. 257, 267 (Wash. Ct.

22   App. 1994) (a plaintiff who "seek[s] redress for emotional distress caused by being accused of a

23   crime must prove the elements of malicious prosecution"); Hanson v. Snohomish, 121 Wn.2d

24   552, 558 (Wash. 1993) ("malice and want of probable cause constitute the gist of a malicious

25   prosecution action").  Ms. Cassette's claim fails because Defendants had probable cause for the

26   search warrant and arrest.

27

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 8

**Conclusion**

The Court finds that there was probable cause for the search warrant issued November 24, 2003 and the subsequent arrest of Ms. Cassette. It further finds that Ms. Cassette has not met her burden of overcoming Defendants' qualified immunity to support her claim for defamation. Because Plaintiff has not raised a genuine issue of material fact on any claim, Defendants' motion for summary judgment is granted and all claims are dismissed with prejudice.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: May 2, 2008.

Marsha J. Pechman
U.S. District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — 9